## WHITE *v.* KEARNEY et al.

A copy of a clearance granted to a coasting vessel at another port in the United States, certified by the deputy collector, under the custom-house seal, to be a true copy of the original, on file in his office, is admissible and sufficient evidence to establish the date of the clearance, when accompanied by the testimony of a clerk in the custom-house of the port for which the vessel was cleared, that the person by whom the certificate was signed was, at the date of the certificate, the acting deputy collector, that the seal was the custom-house seal, and that a search had been made for the original clearance and that it could not be found; and by

WHITE
v.
KEARNEY.

that of another witness, that he had seen the original on file in the custom-house of the port for which the vessel was cleared, and that the signature to it was the genuine signature of the person who was deputy collector.

Where the credit of a commercial firm is used by the authority of one of the partners, and is relied upon by the other party in a transaction in the ordinary course of trade, all the partners will be responsible, whatever may be their liability *inter se.*

The fact of the dissolution of a partnership does not render a partner incompetent to receive, on behalf of the firm, an offer of delivery of goods sold to the partnership, or a demand of payment of the price. It is not necessary to put each partner separately in default upon a contract made before the dissolution.

Where on the refusal of the purchaser to comply with the contract for the sale of merchandise, the vendor sells it at the risk of the former, it is not necessary that the sale should be in all cases at auction. By the breach of the contract the vendor becomes the trustee of the purchaser, to dispose of the merchandise in good faith and with reasonable diligence; and where the property is sold for a fair price, though not at auction, the amount for which it is sold will fix the liability for damages for the breach of contract.

APPEAL from the Commercial Court of New Orleans, *Watts,* J. *Winthrop,* for the plaintiff. *Elwyn, Elmore,* and *W. W. King,* for the appellants. The judgment of the court was pronounced by

SLIDELL, J. This case has already been before the Supreme Court. 9 Rob. 495. The pleadings in the cause, a large portion of the testimony, and the grounds of defence, were then stated. The question of the admissibility in evidence of a certified copy of the vessel's clearance at Thomaston is again made; but under a different state of evidence. The document in question is signed by *C. Baquie,* deputy collector, and has the seal of the custom-house annexed to it. He certifies that "the within is a true copy of the original on file in this office." The copy thus certified is the usual clearance, or permission to the brig Lucy Ann, of Thomaston, to proceed to the port of New Orleans, signed by the deputy collector of the port of Thomaston. The presentation of this document in evidence, was accompanied by the testimony of a clerk in the New Orleans custom-house, who deposed that *Baquie* was, at the date of the certificate, the acting deputy collector, and that the seal was the custom-house seal. He also stated that search had been made for the original clearance, and that it could not be found. Another witness deposed that he had once seen the original, of which the document is a copy, on file at the custom-house at New Orleans. That the signature to said original was the genuine signature of *Spears,* who exercised the functions of deputy collector at Thomaston. Under this evidence and state of facts we think the court below did not err in receiving the document, and considering it as establishing the fact that the vessel was cleared, at Thomaston, on the 31st August, 1843.

It is satisfactorily shown that the vessel was also, in other respects, ready for sea on the 1st September, 1843. She was prevented from leaving port by stormy weather, during the prevalence of which it would have been imprudent to sail, and started as soon as this obstacle ceased. The contract with the defendants' agent was therefore fairly fulfilled, which was, "that the above named brig is to be all ready for sea on the morning of the first day of September."

We find nothing in the evidence justifying the position that the defendants' agents, in making the contract, exceeded the orders of *Kearney.*

It is contended that *Sims,* one of the house of *Kearney & Co.,* was not bound by the contract; that it was the individual contract of *Kearney,* the other partner. The written contract was made by the agent, on behalf of *Kearney & Co.* A portion of the letters, which contain the instructions and

authority to the agent, were written to him by *Kearney*, under his individual signature; but he speaks repeatedly in them of shipments to the house. One of the written communications of *Kearney* to the agent was in these words: "Go as high as $1 50 for the lime.—*K. & Co.*" The answers of the agent, from time to time, advising his contract for purchase and subsequent proceedings, were addressed to the house, and the letter enclosing the contract with plaintiff was received and filed by *Sims*. No objection to the transaction appears to have been made by him in the mean while, nor until after the arrival of the vessel. The agent, who had been a clerk of the house, and was on an intimate and confidental footing with both partners, had verbal communications with *Kearney* on the subject of shipments before his departure for Thomaston. It is evident that in these transactions the credit of the house was used with the full authorisation of one of the firm, and that it was relied upon by the plaintiff. The other partner cannot escape the responsibility to the plaintiff, who dealt with the house upon the faith of *Kearney's* written and verbal instructions on behalf of the partnership, whatever, *inter se,* may be the liability of the partnership for this adventure.

There has been much discussion in argument, as to whether *Kearney & Co.* were put in default upon their contract to receive and pay for this merchandise. There is no doubt whatever on this point, as to *Kearney*. The evidence is not so full as to *Sims,* who contends that he is not bound by acknowledgments of *Kearney* made after the dissolution of the partnership, which occurred about the time the merchandise arrived at New Orleans. But upon consideration of the evidence, other than that of *Kearney's* answers to interrogatories and his other acknowledgments subsequent to the dissolution, we think the court below was justified in considering the default proved as against the firm. The fact of the dissolution did not render *Kearney* incompetent to receive, on behalf of the house, an offer of delivery and demand of payment. We do not think it was necessary to put them separately in default, upon a contract made before the dissolution. See *Cady* v. *Shepherd*, 11 Pick. 409. It is proper also to observe in this connection that, neither *Kearney*, nor *Sims*, in the applications made to them for settlement before suit, objected on the score of a want of offer of delivery. *Kearney* refused to settle on account of the delay in the vessel's departure, and *Sims* upon the ground that the firm was not bound by the contract.

The plaintiff, upon the refusal of the defendants to take the lime, and having notified the defendants that he would sell it at their risk, did sell soon after, at private sale. The defendants contend that he had no right to sell otherwise than at auction. We are not aware that this is the inflexible rule. When, by the breach of the contract, the merchandise was thrown upon the plaintiff's hands, he became the trustee of the defendants to manage it in good faith, and with reasonable diligence. The judge below, who has heard this cause twice, was of opinion that the sale made by the plaintiff, though not at an auction, was at the fair market value. The small profit realised by the purchasers is not a suspicious circumstance, as they retailed it. We are satisfied that the decree of the Commercial Court has done justice between the parties.

*Judgment affirmed.*